UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANNY HAMMOND,

        Petitioner,

v.                                       Case No. 3:20-cv-1243-BJD-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Danny Hammond, an inmate of the Florida penal system, initiated this action on November 2, 2020, by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition; Doc. 1) through counsel. Petitioner challenges a 2015 state court (St. Johns County, Florida) judgment of conviction for robbery with a weapon.[1] He raises five grounds for relief in the Petition. Respondents submitted a Response to Petition (Response; Doc. 13). They also submitted an Appendix with Exhibits

_____

[1] For purposes of reference to pleadings, the Court will cite the document and document page numbers assigned by the Court's electronic docketing system.

1-19.[2] <u>See</u> Doc. 14-1 through 14-2. Petitioner filed a brief in reply (Reply; Doc. 20).

In addition, on June 7, 2021, Petitioner filed a pro se Motion Requesting Leave of the Court to File an Addendum (Doc. 9). On July 13, 2021, the Court granted Petitioner's Notice Withdrawing His Request to Proceed Pro Se (Doc. 11) and struck the pro se motion seeking leave to file an addendum (Doc. 9). <u>See</u> Order (Doc. 12). After Respondents filed their Response (Doc. 13), through counsel, Petitioner sought leave to amend his petition (Doc. 15). Respondents objected (Doc. 16). The Court denied the motion as untimely filed. <u>See</u> Order (Doc. 17). The Court struck a pro se motion for reconsideration (Doc. 21). <u>See</u> Order (Doc. 22).

On July 13, 2023, Petitioner, through counsel, filed a Motion for Reconsideration (Motion; Doc. 23)), asking the Court to grant the Motion, and to accept Petitioner amended claims *nunc pro tunc* to June 2021 as adopted by counsel, and to order Respondents to respond to the merits of Grounds Six and Seven (Doc. 23-1). Respondents filed a Response to Motion for Reconsideration (Doc. 25). On September 20, 2023, the Court granted the counseled Motion and

---

[2] The Court will refer to the exhibits in the Appendix (Doc. 14) as "Ex." Where provided, the page numbers referenced are the Bates stamp numbers at the bottom of each page.

accepted Petitioner's amended claims (Grounds Six and Seven) *nunc pro tunc* to June 10, 2021, the date of the filing of the proposed addendum. <u>See</u> Order (Doc. 26).

Thereafter, Respondents filed their Supplemental Response to Petition as to Grounds 6 and 7 of the June 10, 2021, Addendum (Supplemental Response; Doc. 27). Petitioner filed a Reply to Response (Supplemental Reply; Doc. 28). This case is ripe for review.

## II. Relevant Procedural History

On May 18, 2015, the State of Florida charged Petitioner by amended information in Case No. 14001541CFMA with robbery with a weapon. Ex. 1 at 40. After a jury trial in May 2015, he was convicted as charged and sentenced to thirty years in prison as a prison release reoffender. <u>Id.</u> at 122-29.

Petitioner appealed, raising four issues: (1) whether the trial court erred in failing to grant Defendant's motion for mistrial; (2) whether the court erred in admitting the "gun" into evidence over the Defendant's objection; (3) whether the trial court erred in failing to grant Defendant's motion for new trial; and (4) whether the court erred in sentencing Defendant as a prison releasee reoffender and in sentencing Appellant for a first-degree felony. Ex. 4 at i. Additional briefing followed. Ex. 5; Ex. 6. On May 17, 2016, the Fifth

District Court of Appeal (Fifth DCA) per curiam affirmed Petitioner's conviction and sentence. Ex. 7. The mandate issued on June 10, 2016. Ex. 8.

Petitioner filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on May 26, 2016.[3] Ex. 9. He filed an amended motion on August 8, 2016. Ex. 10. He filed a second amended motion on October 4, 2016. Ex. 11 at 5-104. On November 2, 2016, he filed an addendum. Id. at 107-12. On May 18, 2017, Petition filed an addendum to his second amended motion (Addendum). Id. at 113-16. The circuit court entered an order directing the state to respond to the second amended motion and the Addendum. Id. at 118-19. The state filed a response to the second amended motion and initial addendum. Id. at 136-51. Petitioner filed a reply. Id. at 152-65. The court ordered the state to respond to the Addendum. Id. at 180-81. The state responded, addressing ground eleven. Id. at 182-83.

In an interim order entered August 22, 2018, the circuit court denied the portion of ground three concerning counsel's effectiveness in challenging the description of the gun, grounds four, five, six, seven, nine, and ten of the second

---

[3] In reciting the procedural history, the Court identifies the date of Petitioner's filings giving him the benefit of the mailbox rule. See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

amended motion. Id. at 188-308. With regard to grounds one, two, the portion of ground three pertaining to potential exculpatory witnesses, eight, and eleven, the court stated it would schedule an evidentiary hearing. Id. at 211. The court appointed counsel for the evidentiary proceedings. Id. at 320. On March 11, 2019, the circuit court conducted an evidentiary hearing and both Petitioner and his trial counsel, Thomas Cushman, testified. Id. at 498-587. On April 4, 2019, the court entered its Final Order Denying Motion for Post-Conviction Relief Following Evidentiary Hearing. Id. at 333-492. In its orders resolving the grounds raised by Petitioner, the court set forth the applicable law regarding postconviction claims of ineffective assistance of counsel, citing Strickland v. Washington, 466 U.S. 668 (1984). Ex. 11 at 189-90, 335. The court attached portions of the record to its orders. See Attachments: Ex. 11 at 213-308, Appendix A - Appendix J; Ex. 11 at 349-92, Appendix A – Appendix J.

Petitioner appealed. Ex. 11 at 493. Briefing followed. Ex. 12; Ex. 13; Ex. 14. On November 12, 2012, the Fifth DCA per curiam affirmed. Ex. 15. The mandate issued on December 6, 2019. Ex. 16.

### III. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla.

5

Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## IV. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems,

and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such

as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

8

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

9

state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to

11

hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v.

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice,
> there remains yet another avenue for him to receive
> consideration on the merits of his procedurally
> defaulted claim. "[I]n an extraordinary case, where a
> constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal
> habeas court may grant the writ even in the absence
> of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This
> exception is exceedingly narrow in scope," however,
> and requires proof of actual innocence, not just legal
> innocence. Johnson v. Alabama, 256 F.3d 1156, 1171
> (11th Cir. 2001).

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

13

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland</u>, 466 U.S. at 687).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that

> counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's

16

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## V. Grounds

### A. One-Year Limitations Period and Ground Six

Respondents calculate the Petition (Grounds One through Five) was timely filed. Response at 5. The Petition (Grounds One through Five) was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

On September 20, 2023, the Court granted the counseled Motion and accepted Petitioner's amended claims (Grounds Six and Seven) *nunc pro tunc* to June 10, 2021, the date of the filing of the proposed addendum. <u>See</u> Order (Doc. 26). Of import, claims asserted in an amendment must be filed within the one-year statute of limitation. 28 U.S.C. § 2244(d). <u>See</u> <u>Farris v. United States</u>, 333 F.3d 1211, 1215 (11th Cir. 2003). Rule 15(c) (2) of the Federal Rules of Civil Procedure, instructs: "An amendment of a pleading relates back to the date of the original pleading when ... the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." <u>Mayle v. Felix</u>, 545 U.S. 644, 649 (2005)

17

(quoting Rule 15(c)(2)). If an amendment differs in both time and type from the original claims, it does not relate back. Id. at 650.

Ground Seven is the same as Ground Two and is deemed timely filed as it relates back to the original petition. See Supplemental Response at 1, 11, 23. As such, the Court will address Grounds Two and Seven together.

Ground Six, however, does not relate back to the original petition and is untimely filed. See Supplemental Response at 7-9. As such, Petitioner, through counsel, seeks equitable tolling for Ground Six. Supplemental Reply at 5. He argues equitable tolling should apply as the record reveals, "the undersigned counsel has not disputed that he filed an application for federal habeas relief before Petitioner had a chance to review it." Id. at 7. Of note, this is not a circumstance where Petitioner was unaware of the claim, as counsel admits that he originally vetted the claim and found it lacked sufficient merit for inclusion in the Petition. Id.

Therefore, Ground Six is untimely and due to be dismissed unless Petitioner can establish equitable tolling of the statute of limitations is warranted. The AEDPA is applicable to Petitioner's case as his conviction became final after April 24, 1996, the effective date of AEDPA. Smith v. Jones, 256 F.3d 1135, 1143 (11th Cir. 2001) (by its terms, the state of limitations

18

provision in AEDPA bars any petition filed more than a year after the conviction became final at the conclusion of direct appeal, absent exceptions and qualified tolling periods). The AEDPA one-year limitation period is subject to equitable tolling.  Holland v. Florida, 560 U.S. 631, 651-52 (2010).

Petitioner carries the burden of persuasion. He must satisfy a two-pronged test; he must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Id. at 649 (quotation marks omitted). See Christmas v. Judd, No. 20-14431, 2021 WL 4860927, at *1 (11th Cir. Oct. 19, 2021) (per curiam) (not reported in Fed. Rptr.) (same). Equitable tolling is an extraordinary remedy, only employed in "rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1221 (11th Cir. 2017) (quotations and citation omitted). See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (equitable tolling "is a remedy that must be used sparingly"). This heavy burden is not easily surmounted. See Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (per curiam) (recognizing the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence") (citation omitted).

19

In order to give due consideration to the contention that counsel filed the federal habeas petition before Petitioner had a chance to review it, the Court has reviewed the record and it shows that the Petition (Doc. 1 at 25) contains an Oath which states: "I DECLARE UNDER PENALTY OF PERJURY that I have read the foregoing, and that the information contained herein is true and correct." The declaration contains the electronic signature of Danny Hammond. Id. The certificate of service under the declaration is dated November 3, 2020. Id. The document is also electronically signed by counsel. Id.

The Court concludes that under 28 U.S.C. § 1746 this declaration constitutes an unsworn declaration under penalty of perjury. Thus, the Court will consider the Petition to have been reviewed by Petitioner, and it follows that Petitioner was aware that Ground Six was not contained within the Petition that was to be filed by counsel. Moreover, Petitioner was aware of the claim before the filing of the federal Petition, and it was not included in the Petition.

Based on the record before the Court, Petitioner has not presented any justifiable reason why the dictates of the one-year limitation period should not be imposed upon him. The record demonstrates Petitioner had ample time to

exhaust state remedies and prepare and file the grounds he wished to raise. He has not shown extraordinary circumstances stood in his way and prevented him from timely filing Ground Six. Thus, he has failed to demonstrate that he is entitled to equitable tolling.

In conclusion, because Petitioner has not shown an adequate reason why the dictates of the one-year limitation period should not be imposed upon him, he is not excused from complying with the applicable time constraints. 28 U.S.C. § 2244(d). As such, the Court will dismiss Ground Six with prejudice as untimely.

Alternatively, to the extent Ground Six is properly before this Court, the Court will give AEDPA deference to the state court's ruling. Petitioner alleges his trial counsel was ineffective for failing to adequately investigate his case (Doc. 23-1 at 1-8). Petitioner raised a comparable claim in ground three of his second amended postconviction motion. Ex. 11 at 13-18. The postconviction court summarily denied part of this ground. Ex. 11 at 192-94. In its decision, the court found unsupported a claim of law enforcement tampering. Id. at 193. Also, the court found claims concerning ownership of the gun contradictory and unsupported. Id. After an evidentiary hearing, the court denied the remainder of this ground. The court held: "[b]ased on the testimony presented at the

21

evidentiary hearing, Mr. Cushman had no reason to believe that Mr. Clarkson had valuable information. Accordingly, he was not deficient, nor has Defendant established prejudice and the remaining portion of ground three will be denied." Id. at 342-43. The Fifth DCA affirmed. Ex. 15.

At this stage, Petitioner is challenging a portion of the court's decision with regard to alleged law enforcement tampering (Doc. 23-1 at 1-8), or replacing an air soft pistol with a Daisy Powerline BB gun (model 340). The state court soundly rejected this contention finding it meritless. The court opined:

> During argument on Defendant's motion for new trial, there was discussion over whether to call the gun a "BB gun" or "airsoft gun." (*Transcript of Proceedings, June 19, 2015*, p.22, attached hereto as *Appendix A*). The narrative in the sworn complaint provides that "deputies later recovered the gun which turned out to be a black plastic air soft pistol." (*Sworn Complaint*, p.3, attached hereto as *Appendix B*). The Court observes that the exhibit attached to Defendant's motion demonstrates that the St. Johns County Sheriff's Office identified the gun as a "Black plastic Daisy Powerline brand (Model 340) (S/N 1620139183U) . 177/4.5 mm BB gun w/ a black plastic magazine." The Court finds that the record indicates the officer's initial impression was that the gun was an air soft pistol and upon further examination determine[d] the exact make and model. It is not surprising that the officers could not immediately identify the gun as a "Black plastic Daisy Powerline brand (Model 340) (S/N 162013639183U) . 177/4.5mm

BB gun w/ a black plastic magazine." The Court finds
that the facts presented by Defendant do not support
a claim that law enforcement tampered with evidence.

Ex. 11 at 192-93.

The Court finds the state's court's determination consistent with federal

precedent. Although the Fifth DCA's decision is unexplained, it is entitled to

AEDPA deference. Petitioner has failed to demonstrate that the state court's

adjudication of the claim resulted in a decision that was contrary to, or involved

an unreasonable application of <u>Strickland</u>, or that it was based on an

unreasonable determination of the facts in light of the evidence presented in

the state court. Petitioner is not entitled to habeas relief on Ground Six.

## B. Ground One

As Ground One, Petitioner alleges trial counsel rendered ineffective

assistance for failure to object when the trial court applied an incorrect legal

standard in ruling on Petitioner's motion for a new trial. Petition at 3. The

record includes a Motion for New Trial filed by Petitioner's retained counsel,

Mr. Cushman. Ex. 1 at 112-18. In paragraphs 1 through 8, he urged the court

to find that the verdict was contrary to the law and weight of the evidence. <u>Id.</u>

at 112-14. In particular, he asserted "that it is not conceivable that a jury could

find that the plastic BB pellet pistol was a 'weapon' under the law, wherein the

Jury Instructions clearly defined a 'weapon' as 'any object that could be used to cause death or inflict serious bodily harm'." Id. at 112-13.

The trial court conducted a hearing on the motion for new trial. Ex. 3 at 3-24. Mr. Cushman argued that the verdict is contrary to the weight of the evidence. Id. The court announced its ruling:

> THE COURT: All right. Let me go ahead and make my finding regarding the weapon. I'll find that the hard plastic – are we calling it a BB gun or are we calling it an airsoft gun?
>
> MR. CUSHMAN: Well, I think it probably should be called an airsoft gun.
>
> THE COURT: All right.
>
> MR. FEREBEE: I don't know –
>
> THE COURT: Regarding the –
>
> MR. FEREBEE [the prosecutor]: The object that's in evidence.
>
> THE COURT: All right. The object that's in evidence, that within a – even though there was no testimony regarding its use or what injuries it could cause, that that was a – that that was a – that that was still sufficient evidence to go to the jury for the jury to make a factual determination as to whether it could be a weapon for the circumstance of this case or not.

24

Id. at 22-23. The court rendered its final decision stating, "[s]o, in whole, making those factual findings about those three issues, I would go ahead and deny the motion for a new trial." Id. at 23.

On direct appeal, Petitioner raised the issue of whether the trial court erred in failing to grant Petitioner's motion for new trial with respect to whether the plastic BB pellet pistol was a weapon contending the verdict was against the weight of the evidence. Ex. 4 at 17-20. The Fifth DCA per curiam affirmed. Ex. 7.

Respondents contend that Ground One is unexhausted and procedurally defaulted as it was not included in the postconviction motion. Response at 10, 13-14. The Court finds Petitioner did not exhaust the claim raised in Ground One. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. As Petitioner is procedurally barred from raising this claim, he must demonstrate cause and prejudice. Petitioner has failed to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address the claims on its merits. The Court further finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence. As such, the Court finds that the claim raised in Ground One is procedurally defaulted and the

fundamental miscarriage of justice exception is inapplicable. Petitioner's procedural default bars this Court's review of the claim raised under Ground One.

Petitioner acknowledges procedural default but argues his procedural default should be excused based on the reasoning of <u>Martinez</u> because he did not have post-conviction counsel and his claim has some merit. Reply at 1-2. Apparently, Petitioner contends that the procedural default was caused by the lack of post-conviction counsel, the collateral proceeding was the first opportunity to raise the procedurally defaulted claim, and the procedurally defaulted claim has some merit. <u>See</u> <u>Martinez</u> 566 U.S. at 17.

<u>Martinez</u> provides a narrow, equitable, non-constitutional exception to the holding in <u>Coleman</u>. Thus, Petitioner must demonstrate the claim raised has some merit. <u>Martinez</u>, 566 U.S. at 14. Upon review, the underlying ineffectiveness claim at issue lacks merit; therefore, Petitioner has not demonstrated that he can satisfy an exception to the procedural bar. Petitioner cannot demonstrate prejudice under <u>Strickland</u> because the underlying issue (the trial court erred in denying the motion for new trial) was presented to the 5th DCA and the state appellate court denied relief. Given that the 5th DCA affirmed the trial court's decision on the motion for new trial, it is not

reasonably probable that any objection by counsel to the trial court's application of an incorrect legal standard would have resulted in a different outcome. The 5th DCA did not find the underlying matter reversible, apparently remaining unconvinced that the verdict was against the weight of the evidence.

As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in Martinez, 566 U.S. at 17, is inapplicable and does not excuse the procedural default of this claim. See Clark v. Comm. Ala. Dep't of Corr., 988 F.3d 1326, 1330 (11th Cir. 2021) ("Martinez is of no help because [Petitioner] has not presented a 'substantial claim' that his trial counsel rendered ineffective assistance[.]"), cert. denied, 142 S. Ct. 1134 (2022). Petitioner has failed to establish cause for the procedural default of Ground One and the Court finds Petitioner's default is not excused.

Alternatively, with respect to the merits of Ground One, Respondents point to the evidence at trial, that Petitioner displayed a weapon and implied it was dangerous through his actions and words. Response at 11-13. See Gartner v. State, 118 So. 3d 273, 277 (Fla. 5th DCA 2013) (citing Santiago v. State, 900 So. 2d 710, 711 (Fla. 3d DCA 2005)) (implying a weapon is dangerous

27

or deadly by words or actions is sufficient to reach the jury). "[T]he 'weight of the evidence' standard evaluates whether a greater amount of credible evidence supports an acquittal." <u>Sanchez v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:16-cv-1400-J-34MCR, 2019 WL 1558742, at *23 (M.D. Fla. Apr. 10, 2019) (not reported in F. Supp.) (quoting <u>Velloso v. State</u>, 117 So. 3d 903, 905 (Fla. 4th DCA 2013)). The record shows there was no evidence to rebut the victim and other witnesses. Here the verdict was not contrary to the weight of the evidence. As such, no matter if counsel had objected, there is no reasonable probability the circuit court would have granted the motion for new trial. As such, Petitioner is not entitled to habeas relief.

### C. Grounds Two and Seven

As Ground Two and Ground Seven, Petitioner alleges he received the ineffective assistance of counsel based on counsel's failure to object to improper introduction of hearsay testimony in violation of Florida's Best Evidence Rule (Doc. 23-1 at 8-14). Petition at 11-15. Petitioner contends his counsel performed deficiently by failing to object to Officer Harvey's inadmissible hearsay testimony concerning the contents of the surveillance video, rendered inadmissible under Florida's Best Evidence Rule.

28

In ground nine of his second amended postconviction motion, Petitioner alleged a comparable claim of ineffective assistance of counsel. Ex. 11 at 35-41. The postconviction court summarily denied the claim that counsel was ineffective for failing to object to Officer Harvey's testimony concerning the surveillance video. Id. at 204-207. The court held:

> Officer Harvey's testimony is uncontradicted that law enforcement sought to secure the video recording but the manager was unable to copy it and it was overwritten. The government did not act in bad faith and there was no violation of the Best Evidence Rule. Thus, Defendant's trial counsel did not act unreasonably in failing to object. Moreover, Officer Harvey merely testified that what he saw on the video was consistent with what he was told by the victim; he did not identify the Defendant. Thus even if his counsel was ineffective for failing to object, there was no prejudice demonstrated by Defendant. Thus, ground nine will be summarily denied.

Id. at 206-207.

The record shows the court employed the Strickland two-pronged standard of review; to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice. As such, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court applied the two-pronged Strickland standard. Next, the Court considers whether the state court unreasonably applied that principle to

29

the facts or premised its adjudication on the claim on an unreasonable determination of the facts.

The court found the government did not act in bad faith when it failed to secure the video recording. Evidence at trial supports this ruling. Ex. 2 at 100-102. An attempt was made to retrieve the recording, but the manager was unable to copy it for the police. The manager stated an intention to provide it to a detective, but the detective retired, apparently without receiving the recording as it was not in the state's evidence. Thereafter, when Office Harvey went back to the store to attempt to retrieve the recording it had been overwritten. Even when assuming arguendo defense counsel was somehow deficient in failing to object, given the evidence presented at trial, Petitioner was not prejudiced by trial counsel's failure to object. Two eyewitnesses identified Petitioner. The victim as well as a customer testified as to Petitioner's actions. Even assuming arguendo deficient performance by counsel, Petitioner has not shown any resulting prejudice. Petitioner has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had performed differently. For all of the foregoing reasons, Petitioner is not entitled to habeas relief on the claims raised in Ground Two and Ground Seven.

The Fifth DCA affirmed. Ex. 15. Thus, to the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law.

Applying the look-through presumption set forth in <u>Wilson</u>, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Petitioner has not demonstrated that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts. Thus, the Fifth DCA's decision, although unexplained, is entitled to AEDPA deference. As the AEDPA standard is quite difficult to meet, and Petitioner has failed to meet that standard, Petitioner is not entitled to habeas relief on Ground Two and Ground Seven.

### D. Ground Three

As Ground Three, Petitioner alleges trial counsel rendered ineffective assistance for failure to move in limine and/or object to the introduction of inadmissible character evidence in the form of Lacie Self's testimony that she and Petitioner were at a dope house, they were planning to buy dope, and that

31

she and Petitioner were high on dope. Petition at 15. Petitioner argues this was inadmissible bad character testimony which should have either been addressed through a motion in limine or by objections lodged at trial. Id. at 15-16. He maintains that this testimony permitted the jury to convict based on bad character and to impute a motive for the robbery, drug purchases. Id. at 16.

Respondents contend that Ground Three is unexhausted and procedurally defaulted as it was not included in the postconviction motion. Response at 14, 16. The Court finds Petitioner did not exhaust the claim raised in Ground Three. Because any future attempt to exhaust it would be futile, the claim is procedurally defaulted. As Petitioner is procedurally barred from raising this claim, he must demonstrate cause and prejudice. Petitioner has failed to establish cause and prejudice or that a fundamental miscarriage of justice will result if the Court fails to address the claims on its merits. The Court further finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence. As such, the Court finds that the claim raised in Ground Three is procedurally defaulted and the fundamental miscarriage of justice exception is inapplicable.

32

Petitioner's procedural default bars this Court's review of the claim raised under Ground Three.

Petitioner acknowledges his default of the claim but argues his procedural default should be excused based on the reasoning of Martinez because he did not have post-conviction counsel and his claim has some merit. Reply at 6-7. Accordingly, Petitioner must demonstrate the claim raised has some merit. Martinez, 566 U.S. at 14. Upon review, the underlying ineffectiveness claim at issue lacks merit; therefore, Petitioner has not demonstrated that he can satisfy an exception to the procedural bar.

As noted by Respondents, Mr. Cushman testified at the evidentiary hearing as to his strategy of dealing with Ms. Self. Response at 15-16. Mr. Cushman said he wanted to impeach Ms. Self as much as possible, recognizing that Petitioner "was obviously not hanging around with the cream of the crop as far as, you know, women go, so she got a drug problem, she's hanging at a drug house, she's the one who comes up with the gun, but otherwise there's no connection to the gun between that and Danny Hammond[.]" Ex. 11 at 549. Mr. Cushman's intent was to portray Ms. Self as unreliable and simply out to obtain a deal by testifying in exchange for early release from probation. Id. Mr.

33

Cushman pressed Ms. Self during cross-examination until she demonstrated her frustration and discontent. Id. at 550.

Upon inquiry, Mr. Cushman explained this strategy:

> Well, the decision was if we move for a mistrial what would we get the next time. And I found that repeat trials have a way of being programmed and nobody makes any mistakes the second time around. So I thought we had done a pretty decent job of impeaching her. And the man with the – actually had the gun, no connection to Danny, so I thought we should not move for a mistrial and go with what we had because I didn't think the testimony was going to be better the second time around.

Id. at 551. He stated he adopted this strategy based on his training and experience, being Board certified. Id.

There is a strong presumption that an experienced trial counsel's performance is not ineffective. At the time of his representation of Petitioner, Mr. Cushman was an experienced, Board certified criminal defense attorney. "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Hardwick v. Benton, 318 F. App'x 844, 846 n.2 (11th Cir. 2009) (per curiam) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)).

Under these circumstances, Mr. Cushman did not perform deficiently. He had a strategy in mind, wanting to paint Ms. Self as self-interested, willing

to say anything to get a deal from the state. Regardless, even assuming arguendo deficient performance by counsel, Petitioner has not shown resulting prejudice. Petitioner has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had objected or filed a motion in limine.

As Petitioner has failed to demonstrate the underlying ineffective assistance of counsel claim is a substantial one, the narrow exception set forth in Martinez, 566 U.S. at 17, is inapplicable and does not excuse the procedural default of this claim. See Clark v. Comm. Ala. Dep't of Corr., 988 F.3d 1326, 1330 (11th Cir. 2021) ("Martinez is of no help because [Petitioner] has not presented a 'substantial claim' that his trial counsel rendered ineffective assistance[.]"), cert. denied, 142 S. Ct. 1134 (2022). Petitioner has failed to establish cause for the procedural default of Ground Three and the Court finds Petitioner's default is not excused.

## E. Ground Four

As Ground Four, Petitioner alleges trial counsel rendered ineffective assistance by failing to motion in limine and/or object to the introduction of inadmissible character evidence. Petition at 17. In ground two of his second amended postconviction motion, Petitioner alleged a similar claim of

35

ineffective assistance of counsel. Ex. 11 at 11-13. The postconviction court

considered Petitioner's claim:

> In ground two [including the addendum], Defendant alleges his trial counsel was ineffective for failing to move for a mistrial after Lacie Self gave "unsolicited testimony" regarding Defendant committing additional robberies. At trial, Ms. Self testified that the smoke shop "wasn't the only place" Defendant robbed. Defendant alleges prejudice in that this tainted the jury and deprived the Defendant of a fair trial. Defendant contends that the outcome of the proceeding would have been different had counsel moved for a mistrial. In its response, the State argues that during cross-examination, trial counsel attempted to paint Ms. Self as an unreliable drug user and that it was therefore "sound trial strategy to turn Ms. Self's additional accusations around as more reason to believe her testimony [was] fantastical." The State asserts that Ms. Self was on probation and her testimony could have been discredited by trial counsel as her embellishing to gain favor, which the State alleges was trial counsel's strategy during cross-examination and closing arguments. The Court observes that although defense counsel is entitled to broad deference regarding trial strategy, a finding that some action or inaction by defense counsel was tactical is generally inappropriate without an evidentiary hearing. Santos v. State, 152 So. 3d 817, 819 (Fla. 5th DCA 2014). Thus, ground two will be scheduled for evidentiary hearing.

Ex. 11 at 191-92 (footnote omitted).

At the evidentiary hearing, Mr. Cushman testified concerning his trial

strategy. He was asked if any other witnesses testified as to "additional

36

robberies[.]" Id. at 550. He responded he did not recall such testimony. Id. He stated any additional robberies were not mentioned in closing argument and did not become a feature of the trial. Id. Mr. Cushman testified that he avoided asking Ms. Self about additional robberies. Id. Mr. Cushman explained his strategy of avoiding a mistrial and focusing on impeaching Ms. Self. Id. at 551.

The postconviction court in its Final Order addressed Petitioner's contention of ineffective assistance of counsel. The court began by laying out the claim:

> In ground two [including addendum], Defendant alleges Mr. Cushman was ineffective for failing to move for a mistrial after the State's witness, Lacie Self, gave "unsolicited testimony" regarding Defendant committing additional robberies. At trial, Ms. Self made an unsolicited comment that that the smoke shop "wasn't the only place" Defendant robbed. Defendant alleges prejudice in that this tainted the jury and deprived him of a fair trial. In its response, the State argued that during cross-examination, trial counsel attempted to paint Ms. Self as an unreliable drug user and that it was therefore "sound trial strategy to turn Ms. Self's additional accusations around as more reason to believe her testimony [was] fantastical." The State asserted that Ms. Self was on probation and her testimony could have been discredited by trial counsel as her embellishing to gain favor, which the State alleged was trial counsel's strategy during cross-examination and closing arguments.

Id. at 338-39 (footnote omitted).

37

Next, the court noted Mr. Cushman's testimony concerning his strategy to impeach Ms. Self as much as possible and paint her as unreliable. Id. at 339. This included highlighting the fact that Ms. Self's intention was to get off probation by snitching. Id. Mr. Cushman testified that he believed his cross-examination was effective. Id. He also attested that he did not move for a mistrial because if it were granted, "Ms. Self would be much better prepared during a subsequent trial, and his cross-examination would not be effective." Id. Mr. Cushman explained that he did not believe Ms. Self's statements about additional robberies would be given much credibility based on her testimony showing she was not very credible. Id. at 339-40. Not wanting to highlight her statements, he did not seek a curative instruction. Id. at 340.

The court held:

> The Court finds that Mr. Cushman did not act outside the broad range of reasonable assistance under prevailing professional standards in failing to move for a mistrial on the basis of Ms. Self's comment, and there is not a reasonable probability that the result in the case would have been different if Mr. Cushman would have moved for a mistrial. The Court finds Mr. Cushman effectively impeached Ms. Self's credibility during cross-examination by emphasizing her drug use and the fact that she implicated Defendant in hopes of avoiding jail. (*Transcript of Proceedings*, May 27, 2015, attached hereto as *Appendix D*). Mr. Cushman is correct that had a mistrial been granted, Ms. Self would have been better prepared for cross-

38

> examination in a subsequent trial to improve her credibility. The Court notes that Ms. Self's unsolicited statements about Defendant's alleged other robberies came across as combative and undermined her already diminished reliability. The Court further notes that Mr. Cushman's strategy of not asking for a curative [instruction] was reasonable so as to not highlight the comment. Further, Defendant has failed to establish that had Mr. Cushman moved for a mistrial that it would have been granted, or if granted, that the outcome of his case would have been different. The Court finds that defendant has not established deficient performance or prejudice and ground two will be denied.

<u>Id</u>. at 340-41. The Fifth DCA per curiam affirmed the denial of relief without a written opinion. Ex. 15.

As such, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, Petitioner's ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice.

Accordingly, he is not entitled to federal habeas relief on the claim in Ground Four. Petitioner's counsel was experienced and testified as to his strategy at the evidentiary hearing. Here there is a strong presumption that his performance was within the bounds of reasonable professional assistance. And, notably, this Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by" this Court. Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (internal quotation marks omitted) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

Not only has Petitioner failed to satisfy the performance prong, but he also failed to satisfy the prejudice prong of Strickland. There is no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. For it to be different, the Court would have to assume that the even if counsel had objected to the statements about additional robberies it would have made a difference in the case. Regardless of Ms. Self's statements, the record shows the state presented substantial evidence as to Petitioner's commission of the robbery for which he was charged. As such, Petitioner cannot satisfy the prejudice prong of Strickland.

## F. Ground Five

As Ground Five, Petitioner alleges trial counsel rendered ineffective assistance by advising Petitioner to not testify at trial. Petition at 20. He argues that the defense's theory of the case, as exhibited in opening statement, was that Petitioner knew the victim, he went to visit her, and she was angry with him. Id. at 20-21. He contends his defense counsel failed to present evidence to support its theory expressed in opening statement. Id. at 21.

Petitioner raised this ground in his addendum as ground eleven. The court determined that an evidentiary hearing was needed to properly address his claim. Ex. 11 at 209-10. During the course of the evidentiary hearing, Mr. Cushman testified that a week before trial Petitioner admitted to co-counsel that he had not been in a relationship with the victim. Id. at 558-59. Also, Mr. Cushman testified that he and Petitioner discussed the right to testify. Id. at 559. Mr. Cushman advised Petitioner that if he took the stand, the prosecutor may question Petitioner about how many times he had previously been convicted of a felony. Id. at 560. Mr. Cushman stated in his experience, when a jury hears there have been seven prior incidents of dishonesty or felony convictions the jury disregards the defendant's testimony after that admission. Id. Mr. Cushman said he was attempting to paint Petitioner as a nice guy, not

41

a career criminal. Id. As such, he advised Petitioner to not take the stand. Id.
Petitioner eventually agreed with that advice and told the court he was
satisfied with his decision not to testify. Id. On cross-examination, Mr.
Cushman further explained that he did not want Petitioner to take the stand
because Petitioner's decision-making ability was very poor. Id. at 566.

The trial record demonstrates that Mr. Cushman told the court they had
discussed whether or not Petitioner would testify. Ex. 2 at 190. Petitioner told
the court he was satisfied with his decision not to testify. Id.

In addressing this ground, the postconviction court reasoned: "[a]lthough
Defendant's decision was voluntary, the Court must determine whether any
reasonable attorney would have encouraged Defendant to testify, under the
circumstances, including his multiple felony convictions." Ex. 11 at 346. The
court considered the testimony presented at the evidentiary hearing by both
Mr. Cushman and Petitioner. Id. Thereafter, the court rejected the claim
finding neither deficient performance nor prejudice:

> The Court finds Mr. Cushman was reasonable to
> advise Defendant, a multiple convicted felon, not to
> testify. The record reflects that the Court conducted an
> independent inquiry into Defendant's desire not to
> testify. Based on Defendant's testimony, it is clear that
> Mr. Cushman did not refuse to let him testify, but
> rather advised him against it and Defendant decided
> to take Mr. Cushman's reasonable advice. The Court

does not find Defendant's testimony to be credible and finds that Mr. Cushman was not deficient in recommending Defendant not testify. Further, the Court finds Mr. Cushman's observation that had Defendant taken the stand, he likely would have made things worse to be a very reasonable conclusion and accordingly, Defendant cannot establish prejudice.

Id. at 347. The Fifth DCA per curiam affirmed. Ex. 15.

This Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of the claim is not entitled to deference, Petitioner's ineffectiveness claim is without merit. The right to testify is "located" in the Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause of the Sixth Amendment and is corollary to the Fifth Amendment's guarantee against compelled testimony. Lott v. State, 931 So. 2d 807, 817-18 (Fla. 2006) (per curiam) (citing Rock v.

<u>Arkansas</u>, 483 U.S. 44, 51-52 (1987)). A criminal defendant makes the fundamental decision as to whether to testify in his own behalf. <u>Id</u>. at 817 (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983)). Here, the record shows Petitioner voluntarily agreed not to testify on his own behalf.

The record shows that counsel told the court Petitioner did not plan to testify. Petitioner confirmed that fact for the court. Petitioner had an extensive criminal record, "a multiple convicted felon." Under these circumstances, a reasonable attorney would have discouraged a defendant from taking the stand preventing the jury from hearing the defendant is a convicted felon for multiple offenses. Indeed, a reasonable attorney would have discouraged Petitioner from taking the stand as his testimony would be impeachable.

In denying post-conviction relief, the trial court found that it would not be unreasonable for defense counsel to discourage Petitioner from testifying to avoid potentially damaging impeachment about multiple prior convictions. Indeed, on these facts, Petitioner's contention that no reasonable attorney would have discouraged Petitioner from testifying is not supportable. Moreover, the court did not find Petitioner's testimony credible. The Court is not in a position to re-weigh this credibility determination.

44

Petitioner's extensive criminal record would have allowed for impeachment and the state's introduction of a large number of offenses would have severely damaged Petitioner's standing before the jury. Furthermore, Mr. Cushman was justifiably wary of putting Petitioner on the stand due to Petitioner's poor judgment and decision-making. Finally, the defense decided not to put on a case, apparently choosing a strategy of requiring the state to prove the elements of its case. As such, Petitioner is not entitled to habeas relief on Ground Five.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) (with addendum (Doc. 23-1)) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

3.      The Clerk of the Court shall enter judgment denying the Petition (Doc. 1) (with addendum (Doc. 23-1)) and dismissing this case with prejudice.

3.      If Petitioner appeals the denial of the Petition (Doc. 1) (with addendum (Doc. 23-1)),[7] the Court denies a certificate of appealability. Because

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or

45

the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

    4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

    **DONE AND ORDERED** at Jacksonville, Florida, this 29th day of November, 2023.

                          BRIAN J. DAVIS
                    United States District Judge

sa 11/17
c:
Counsel of Record

---

that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

46